Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: February 8th, 2019**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 3:14-bk-30271 |
| GREGORY DALE HATFIELD, | CHAPTER 7 |
| Debtor. | JUDGE FRANK W. VOLK |

## MEMORANDUM OPINION AND ORDER

Pending are several Motions to Avoid Lien filed by the Debtor, Gregory Dale Hatfield. The Motions are as follows: Motion to Avoid Judicial Lien Held by Jon Sinko and Marla Sinko and Recorded in Cabell County, West Virginia, at Book #122, Page #115 [dckt. 106]; Motion to Avoid Judicial Lien Held by Jon Sinko and Marla Sinko and Recorded in Cabell County at Book #122, Page #117 [dckt. 108]; Motion to Avoid Judicial Lien Held by Kevin Kinzer and Recorded in Cabell County at Book #122, Page #120 [dckt. 110]; Motion to Avoid Judicial Lien Held by Kevin Kinzer and Recorded in Cabell County at Book #122, Page #121 [dckt. 112]; Motion to Avoid Judicial Lien Held by Jim Holt and Betty Holt and Recorded in Cabell County at Book #122, Page #363 [dckt. 114]; and Motion to Avoid Judicial Lien Held by Jim Holt and Betty Holt and Recorded in Cabell County at Book #122, Page #366 [dckt. 116]. The Sinkos, the Holts, and Mr. Kinzer all filed a Joint Objection to the Motions to Avoid Lien [dckt. 119].

The Court held a hearing on the Motions and the Objection on January 26, 2018. At the hearing, the Court instructed the objectors to memorialize their arguments separately and in writing so that they might be spread on the record. Mr. Kinzer filed his Objection at dckt. 134, the

Holts at dckt. 135, and the Sinkos at dckt. 136. Mr. Hatfield filed his reply [dckt. 137] on February 12, 2018. The matter is fully briefed and ready for adjudication.

The Motions to Avoid Lien are materially identical. The same is true for the Objections. The Court will treat them in unitary fashion. Thus the Court will refer jointly to the Motions to Avoid Lien as the "Motions" and the Objections as the "Objections."

## I.

Gregory Dale Hatfield filed his Chapter 7 petition on July 9, 2014. He listed three parcels of real property in his schedules [dckt. 15]. According to Schedules D and E, two of the three parcels are encumbered by bank liens, and all three are subject to secured liens of the Internal Revenue Service and the West Virginia Office of the Insurance Commissioner. Mr. Hatfield exempted exactly $1 in each of the three properties according to Schedule C. The Meeting of Creditors was held on October 15, 2014.

The three parcels of real property listed on the schedules consist of, and are referred to hereinafter as, a residential property, a farm property, and a farm road. The residential property was jointly owned by Mr. Hatfield and his wife, with each holding an undivided one half interest in the property. The value of Mr. Hatfield's interest in the residential property was scheduled at $111,750.00, with $127,875.00 in secured claims against it in favor of Chase Bank. Mr. Hatfield held the entire estate interest in the two other properties. The farm property was scheduled at $105,000.00, with $54,771.00 in secured claims against it in favor of Huntington. The farm road was valued at $2,500.00, with no secured claims attached.

All three properties were listed as being subject to exemptions under both West Virginia Code § 38-10-4(a) (which lists exemptions of property in bankruptcy proceedings),

created pursuant to 11 U.S.C. § 522(b)(1), and West Virginia Code § 38-9-1 (which provides a homestead exemption), subject to the provisions of Article 6 § 48 of the West Virginia Constitution (which provides a $5,000 homestead exemption with certain provisos).

Mr. Hatfield's wife, a nondebtor, contracted to sell her one-half interest in the residential property to the Trustee in order to relieve her obligation to pay the balance on the outstanding deeds of trust. On October 29, 2015, the property in its entirety became the subject of the Trustee's Motion to Amend Order Authorizing Sale of Real Property, to be Sold Free and Clear of All Liens and Encumbrances, Pursuant to 11 U.S.C. § 363 and Allowing All Reasonable and Necessary 11 U.S.C. § 506(c) Expenses to be Paid ("Amended Sale Order") [dckt. 47] for the price of $190,000. On January 6, 2016, the Court entered the Amended Sale Order.

The Trustee's Report of Sale [dckt. 75] reveals the residential property was purchased on February 10, 2016, resulting in $27,840.69 in net sale proceeds for Mr. Hatfield's Bankruptcy Estate. The sale of the residential property left the farm property as the only Estate parcel with secured claims. As noted, the farm property had a lien against it in the amount of $54,771.00, which was held by Huntington Bank through a mortgage. The Estate was also subject to certain judgment liens for which avoidance is now sought.

The pertinent liens and three related Agreed Judgment orders arose out of litigation in the Circuit Court of Raleigh County against Mr. Hatfield and an entity known as Twin Silos at LaValette, LLC ("LaValette"), a nondebtor. Mr. Hatfield and LaValette were sued in separate civil actions by, respectively, the Holts, the Sinkos, and Mr. Kinzer (collectively "Raleigh County Plaintiffs"). The litigation appears to have arisen out of defaults on separate promissory notes executed by Mr. Hatfield and LaValette in favor of the Raleigh County Plaintiffs. Pursuant to a

September 3, 2009, Settlement Agreement that concluded the Raleigh County litigation, it was agreed as follows:

> 1. Defendants acknowledge that the previously granted judgment for each [Raleigh County Plaintiff] . . . is to be recorded as a lien against Greg Hatfield, Individually, and [LaValette] . . . in accordance with West Virginia law.
>
> 2. Defendants also agree to confess judgment in the amount of Twenty Thousand Dollars ($20,000.00) in favor of [the Raleigh County Plaintiffs], collectively, with Six Thousand Six Hundred Sixty-six and 66/100 Dollars ($6,666.66) allocated for each plaintiff . . . .

Claim 5-1 at 10. Further relevant information respecting the Raleigh County litigation appears as follows based upon the Court's independent review of the Claims Register:

| *Plaintiff Name* | *Civil Number* | *Note Date & Amt.* | *Judgment Date & Amt.* |
|---|---|---|---|
| James and Betty Holt | 08-C-991 | 03/29/2007 $50,000 at 8% | 07/23/2009 $59,152.00 plus int. and costs |
| James and Betty Holt | 08-C-991 | Same as above | 02/02/2010 $6,666.66 plus int. and costs |
| Jon and Marla Sinko | 08-C-994 | 03/29/2007 $50,000 at 8% | 07/23/2009 $59,152.00 plus int. and costs |
| Jon and Marla Sinko | 08-C-994 | Same as above | 02/02/2010 $6,666.66 plus int. and costs |
| Kevin Kinzer | 08-C-993 | Note not attached to claim | 07/09/2009 $59,152.00 plus int. and costs |
| Kevin Kinzer | 08-C-993 | Note not attached to claim | 02/02/2010 $6,666.66 plus int. and costs |

The respective claims of the Holts, the Sinkos and Mr. Kinzer are found on the Claims Register respectively at 5-1, 7-1, and 8-1. The amount of each claim is $96,597.64.[1] In Mr. Hatfield's reply brief, he contends that the Raleigh County Plaintiffs each received a distribution of $5,289.17, as set forth in the Trustee's final report. Copies of the six liens for which avoidance is sought are not contained in the record.

---

[1] These claim amounts were apparently arrived at by adding to the respective adjudged sum of $59,152.00 and $6,666.00 the annual interest accruing at 8% for each of the years from 2010 through 2014. *See*, *e.g.*, Claim 8-1 at 4.

On October 11 through October 13, 2018, Mr. Hatfield filed the Motions to avoid these pre-bankruptcy judicial liens. The Motions contended that Mr. Hatfield's property was subject to the statutory exemptions earlier stated. The Motions additionally asserted that the judicial liens impaired the exemptions claimed by Mr. Hatfield and would hinder the fresh start he sought.

The Objections were filed February 2, 2018. The creditors contended (1) the judicial lien does not impair Mr. Hatfield's exemptions, and (2) if the lien is avoided, it should only be avoided to the extent of the impairment of the exemption. That would result in avoidance only to the extent of the $1 claimed exempted by Mr. Hatfield.

On February 12, 2018, Mr. Hatfield responded to the Objections. He reiterates that the exemptions will be impaired by the judicial liens, but adds that when determining if a judicial lien impairs the exemption, the Court must look at the hypothetical amount that could be claimed exempt under the statute and not the actual amount claimed.

## II.

### A. Governing Standard

The Bankruptcy Code gives state sovereigns the power to "define what property a debtor may exempt from the bankruptcy estate that will be distributed among his creditors. 11 U.S.C. § 522(b). The Code also provides that judicial liens encumbering exempt property can be eliminated. 11 U.S.C. § 522(f)." *Owen v. Owen,* 111 U.S. 305, 306 (1991). As noted in the *Owen* decision, an exemption "is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Id.* at 308. The Supreme Court elaborated further as follows:

> Section 522 determines what property a debtor may exempt. Under § 522(b), he must select between a list of federal exemptions (set forth in § 522(d)) and the

exemptions provided by his state, "unless the State law that is applicable to the debtor … specifically does not authorize," § 522(b)(1) –that is, unless the State "opts out" of the federal list."

*Id.* at 308.

The policy reasons underlying the exemption process align closely with those of the Code in its entirety. As noted by my good colleague in the North,

Federal bankruptcy law serves two essential purposes. First, as often stated, the purpose of bankruptcy is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Second, "[b]ankruptcy law, at its core, is debt-collection law." Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law*, p. 3 (Harvard University Press, 1986), reprinted by Beard Books (2001); *see also Young v. Higbee Co.*, 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890 (1945)

*In re Morrell*, 394 B.R. 405, 409 (Bankr. N.D. W. Va. 2008).

West Virginia has opted out of the federal exemption scheme and specifically does not authorize debtors who are domiciled in the state to exempt the property specified under the provisions of 11 U.S.C. § 522(d). W. Va. Code § 38-10-4; *see Sheehan v. Peveich*, 574 F.3d 248, 251 (4th Cir. 2009) ("In 1981, approximately two years after the Bankruptcy Code became effective, West Virginia opted out of the federal bankruptcy exemption scheme upon enactment of West Virginia Code § 38–10–4."). If a State decides to opt out, "its debtors are limited to the exemptions provided by state law. Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions." *Owen*, 111 U.S. at 308.

Section 38-10-4(a) allows a single debtor to exempt up to $25,000 in real property that the debtor uses as a residence. *See* W. Va. Code § 38–10–4(a); *In re Mitchell*, 400 B.R. 503, 509 (Bankr. N.D. W. Va. 2009). Section 522(l) of the Code requires a debtor to file a list of the property that the debtor wishes to claim as statutorily exempt from the estate. 11 U.S.C. § 522(l).

*Schwab v. Reilly*, 560 U.S. 770, 779 (2010). Federal Rule of Bankruptcy Procedure 4003 gives creditors and the bankruptcy trustee 30 days from the meeting of creditors to object. Section 11 U.S.C. § 522(l) also states, "unless a party in interest objects, the property claimed as exempt on such list is exempt."

Section 522(f) of the Bankruptcy Code provides a mechanism allowing a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled if such lien is a judicial lien." 11 U.S.C. 522(f)(1)(A). The stated purpose of the §522(f) judicial lien avoidance is to protect a debtor's discharge, exemption rights, and the fresh start. H.R. Rep. 595, 95th Cong., 2d Sess. 362.

The formula for whether an exemption is impaired and a judicial lien can be avoided is set out in 11 U.S.C. 522(f)(2)(A). The formula requires adding together the lien(s) being avoided, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property. 11 U.S.C. § 522(f)(2)(A)(i)-(iii). The amount of the exemption is determined based on the hypothetical exemption that is allowed under the statute; the amount actually claimed by the debtor is immaterial to the formula. 11 U.S.C. § 522(f)(2)(A)(ii); *See Zeigler Eng'g Sales v. Cozad (In re Cozad)*, 208 B.R. 495 (B.A.P. 10th Cir. 1997) (holding that the formula for avoiding a judicial lien is not tied to the amount of equity that a debtor has in property).

If the total from the liens and statutory exemption exceeds the value that the debtor's interest in the property would have in the absence of any liens, then the judicial lien would be impairing the exemption and the judicial lien may be partially avoided, and wholly avoided if it is in excess of the judicial lien sought to be avoided. 11 U.S.C. § 522(f)(2)(A).

**B.** **Analysis**

In the present case, in order for Mr. Hatfield to avoid the perfected judicial liens held by the creditors, the exemptions must be found to apply and, under the lien avoidance formula set out in 11 U.S.C. § 522(f)(2)(A), have the exemption be impaired by the judicial lien.

Mr. Hatfield claimed exemptions under W. Va. Code 38-10-4(a) and W. Va. Code 38-9-1 in his schedule C filed on July 9, 2014. At no point were these exemptions challenged by the creditors or the Chapter 7 Trustee, up until the filing of the Objections. Neither Mr. Kinzer, the Holts, the Sinkos, nor the Chapter 7 trustee objected to the claimed objections within thirty days of the meeting of creditors held on October 15, 2014. No extension for objections was requested by any interested party.

Accordingly, under 11 U.S.C. § 522(l) and Rule 4003(b), following from the decision in *Taylor*, the validity of the exemptions claimed by Mr. Hatfield in his Schedule C cannot be challenged and must be accepted at this time. *See* 503 U.S. 638, 642.

Under the lien avoidance formula set out in 11 U.S.C. § 522(f)(2)(A), to determine if Mr. Hatfield's exemptions claimed in his Schedule C are impaired by the judicial liens, the Court must evaluate the total of the liens sought to be avoided, all other liens on the property, and the statutory maximum exemption.

The judicial liens held by each party must be considered individually, even though the judicial liens are identical. The total amount of the judicial lien sought to be avoided by each of the three creditors is $96,597.67. The other two identical judicial liens held are calculated into the formula as part of all the other liens on the property, totaling $193,195.34. The first lien on the property listed is the $54,771.00 mortgage held by Huntington Bank.

West Virginia Code § 38-10-4(a) carries a $25,000 exemption for a property used as a residence in bankruptcy. Also, West Virginia Code § 38-9-1 carries a $5,000 homestead exemption. Thus, Mr. Hatfield was eligible to take a total exemption of $30,000 in the farm property.

Totaling the lien to be avoided, the other judicial and consensual liens, and the exemptions on the property, results in an amount of $374,564. This amount must be compared with the value of the property, which is scheduled at $105,000. The deficit between those numbers is $269,564.01. This amount far exceeds that of the $96,597.67 individual judicial liens held by each of the Raleigh County Plaintiffs. Under the 11 U.S.C. § 522(f)(2)(A) formula, since the liens and exemptions, compared to the value of the property, amount to far greater than each judicial lien sought to be avoided, each of the judicial liens must be wholly avoided.

For the above reasons,

**IT IS ORDERED** that judicial liens held by Mr. Kinzer, the Holts, and the Sinkos be, and are hereby, **AVOIDED IN THEIR ENTIRETY.**